UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADA COUNTY HIGHWAY DISTRICT,<br><br>      Plaintiff,<br><br>v.<br><br>RHYTHM ENGINEERING, LLC, a Kansas limited liability company ,<br><br>    Defendant. | Case No. 1:15-cv-00584-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS (DKT. 7)** |
| RHYTHM ENGINEERING, LLC, a Kansas limited liability company,<br><br>    Counterclaimant,<br><br>v.<br><br>ADA COUNTY HIGHWAY DISTRICT,<br><br>    Counterdefendant. | |

## INTRODUCTION

Pending before the Court is Defendant Rhythm Engineering's partial motion to dismiss, seeking to dismiss Plaintiff Ada County Highway District's claims of unjust

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 1**

enrichment and breach of implied warranty of merchantability. (Dkt. 7.) The motion is fully briefed and the Court heard oral argument from the parties on August 22, 2016. After review of the record and consideration of the parties' arguments and relevant legal authorities, the Court will grant Rhythm's motion to dismiss the unjust enrichment claim, with leave to amend, and will deny the motion to dismiss the breach of implied warranty of merchantability claim.

## FACTUAL BACKGROUND[1]

On January 8, 2014, ACHD and Rhythm entered into an Adaptive Control Technology Purchase Agreement (Purchase Agreement)[2] for the installation of a signal control system on roads throughout Ada County, Idaho. Adaptive signal control technology systems are composed of computer hardware and software, which together, are designed to help control the flow of traffic over busy roads.

The Purchase Agreement contained a two year warranty. Compl., ¶ 9 (Dkt. 1 at 4). Pursuant to the Purchase Agreement, Rhythm agreed to provide a full refund if, after three months of operation, ACHD believed the adaptive signal control technology system

---

[1] For the purposes of Rhythm's motion to dismiss, this background section accepts as true the allegations raised in ACHD's Complaint. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court must consider any disputed material facts in the light most favorable to ACHD, the nonmoving party.

[2] The Purchase Agreement is not in the record. It appears Rhythm intended to attach the Purchase Agreement as an Exhibit to its partial motion to dismiss; however, there is no attachment in the docket. *See* Mot. to Dismiss, fn. 1 (Dkt. 8) ("Attached as Exhibit A, is the Purchase Agreement in its entirety. The Purchase Agreement consists of three distinct attachments entitled: (1) Scope of Work; (2) Work Schedule; and, (3) Payment Schedule."). During the hearing, Rhythm's counsel offered to file the Purchase Agreement, but also argued that the Court's consideration of the Purchase Agreement is not essential to the resolution of the issues raised in the motion to dismiss. ACHD objected to Rhythm's request and argued that, because Rhythm's request for dismissal of certain claims is better suited for a motion for summary judgment, it would be improper for the Court to consider the Purchase Agreement.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 2**

did not reduce travel time and emission and fuel consumption, while also improving safety. *Id.* To receive a full refund, ACHD had to: (1) collect before and after data using the same collection method; (2) allow Rhythm time to "fine tune" the adaptive signal control technology system; and (3) provide a written list of concerns to Rhythm. *Id.*

Between December of 2014 and October of 2015, ACHD and Rhythm corresponded in writing and discussed, in-person, problems ACHD was experiencing with the adaptive signal control technology system. *Id.* at ¶ 11 (Dkt. 1 at 4). Rhythm attempted to correct the system's problems; however, Rhythm's attempts were not successful.[3]

On November 9, 2015, ACHD notified Rhythm of its rejection of the adaptive signal control technology system and termination of the Purchase Agreement.[4] *Id.* at ¶ 19 (Dkt. 1 at 5). ACHD identified Section C.12 of the Purchase Agreement as the basis for termination,[5] and asserted that the system failed field operational testing three times by failing to automatically adjust based on the traffic conditions, which in turn, lead to the

---

[3] On December 23, 2015, ACHD emailed Rhythm regarding the hundreds of system notifications ACHD received with the message "camera unresponsive." Compl., ¶ 12 (Dkt. 1 at 4). This forced ACHD to suspend testing of the new system. *Id.* On March 3, 2015, ACHD notified Rhythm of detection issues related to the system's cameras going into "fog mode," which apparently caused the system to use historical data rather than then-existing traffic conditions. *Id.* at ¶ 13 (Dkt. 1 at 5). ACHD suspended testing again while Rhythm identified potential fixes to the problem. On June 3, 2015, and again on September 18, 2015, ACHD informed Rhythm that the purported fixes did not resolve the "fog mode" issue. *Id.* at ¶¶ 14-15 (Dkt. 1 at 5).

[4] Before informing Rhythm of its intent to terminate the Purchase Agreement, ACHD first received approval to terminate the Purchase Agreement from the Idaho Transportation Department. Compl., ¶¶ 17-18 (Dkt. 1 at 5).

[5] ACHD cited also other legal remedies pursuant to Section 12.3 of the Purchase Agreement and remedies under the Idaho Uniform Commercial Code.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 3**

failure to reduce side street delays. *Id.* In its termination notice, ACHD demanded a full refund. *Id.*

Three days later, Rhythm responded to the termination notice, informing ACHD that ACHD did not have the right to terminate the Purchase Agreement under Section C.12, ACHD's rejection of the system was untimely under the Idaho Uniform Commercial Code, and ACHD failed to comply with conditions of the warranty. *Id.* at ¶ 20 (Dkt. 1 at 6). Rhythm demanded ACHD return the adaptive signal control technology system equipment within 30 days for a refund under the warranty. On December 8, 2015, ACHD attempted to return the system's equipment to Rhythm via Federal Express overnight delivery; Rhythm refused to accept delivery of the equipment. *Id.* at ¶¶ 24-25 (Dkt. 1 at 6).

On December 16, 2015, ACHD filed a Complaint against Rhythm asserting the following claims: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; and (5) unjust enrichment. ACHD seeks a full refund of the purchase costs of the adaptive signal control technology system and attorney fees.

On February 16, 2016, Rhythm filed an answer and counterclaim against ACHD (Dkt. 6) and a partial motion to dismiss ACHD's unjust enrichment and breach of implied warranty of merchantability claims (Dkt. 7). The motion is ripe for the Court's consideration.

## LEGAL STANDARDS

### I. Motion to Dismiss

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations,… it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotations marks omitted).

### II. Leave to Amend

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether she "is entitled

to offer evidence to support the claims." *See Hydrick v. Hunter,* 466 F.3d 676, 685 (9th Cir. 2006).

## DISCUSSION

### I. Unjust Enrichment

Rhythm claims that Count V—unjust enrichment—must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because ACHD admits the existence of an enforceable express written contract that governs the parties' relationship. Rhythm alleges also that the unjust enrichment claim should be dismissed because the unjust enrichment claim itself refers to the existence of a contract, which otherwise defeats the unjust enrichment claim. To the contrary, ACHD contends that, because it is yet to be determined whether the Purchase Agreement is enforceable, and ACHD may plead inconsistent claims pursuant to Fed. R. Civ. P. 8, it is premature to dismiss its unjust enrichment claim. As explained below, the Court agrees with Rhythm's second argument and will dismiss the unjust enrichment claim, although will grant leave to ACHD to amend.

"Unjust enrichment, or restitution, is the measure of recovery under a contract implied in law." *Barry v. Pac. W. Const., Inc.*, 103 P.3d 440, 447 (Idaho 2004). "A contract implied in law, or quasi-contract, 'is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties, and, in some cases, in spite of an agreement between the parties.'" *Id.* (citing *Continental Forest Prod., Inc. v. Chandler Supply Co.,* 518 P.2d 1201 (Idaho 1974)).

Pursuant to Idaho law, to prevail on an unjust enrichment claim, the plaintiff bears the burden of proving: "(1) a benefit conferred upon defendant by plaintiff; (2) appreciation by the defendant of the benefit; (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment of the value thereof." *Aberdeen—Springfield Canal Co. v. Peiper,* 982 P.2d 917, 923 (Idaho 1999).

The doctrine of unjust enrichment, however, does not apply in circumstances where there is an enforceable express contract between the parties covering the same subject matter. *Wilhelm v. Johnston,* 30 P.3d 300, 307 (Idaho. Ct. App. 2001) (finding that the existence of an enforceable promissory note and deed of trust precluded the application of unjust enrichment). "The reason for this rule presently is that the remedies for breach of an express contract, whether by law or by express agreement, afford adequate relief." *Triangle Min. Co., Inc. v. Stauffer Chem. Co.,* 753 F.2d 734, 742 (9th Cir. 1985); *Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011).

"However, an express contract cannot provide adequate relief when it is not enforceable." *Thomas*, 249 P.3d at 836. "[O]nly when the express agreement is found to be enforceable is a court precluded from applying the doctrine of unjust enrichment in contravention of the express contract." *Wolford v. Tankersley,* 695 P.2d 1201, 1203 (Idaho 1984); *see also United States v. Berkley Regional Ins. Co.,* 1:13-CV-00209-DOC, at Dkt. 136 (D. Idaho March 28, 2016) ("Because a valid, enforceable Subcontract exists that covers the subject matter of the equitable claims, [plaintiff] is precluded from recovering under its equitable theories.").

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 7**

Rhythm argues in its motion that ACHD "fully admits there exists a valid enforceable contract between the parties" in its Complaint. Rhythm suggests also it can be inferred that the Purchase Agreement is enforceable because Rhythm admitted in its Answer that the Purchase Agreement exists, Rhythm did not allege any equitable defenses in its Answer or assert any theories of equitable relief in its counterclaim, and ACHD did not allege in its Complaint that the Purchase Agreement is either invalid or not enforceable.

ACHD explained during oral argument that it is not prepared to concede that the Purchase Agreement and each of its various provisions are enforceable before conducting thorough discovery. In response, Rhythm argued that, while the parties may dispute the meaning of the terms of the contract and the scope of the contract, these disagreements do not provide ACHD the ability to proceed on its equitable theories of relief because the parties have agreed that the Purchase Agreement itself is enforceable.

It is not yet determined whether the Purchase Agreement between the parties is enforceable. Rhythm's recitation of the language of the Complaint is only partially accurate. While ACHD admitted that a Purchase Agreement exists between it and Rhythm, ACHD has not admitted that each and every provision in the Purchase Agreement is in fact enforceable against Rhythm or vice versa. Rhythm cites to *United States v. Berkley Regional Ins. Co.,* 1:13-CV-00209-DOC, at Dkt. 136 (D. Idaho March 28, 2016) for the proposition that a dispute about the terms in the contract alone does not permit a plaintiff to proceed on equitable claims of relief. However, unlike the present

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 8**

case, there remained no dispute that the terms in the contract that addressed the issues in the lawsuit in *Berkley* were valid and enforceable.[6]

Acknowledgement of a written agreement and concession of enforceability are not one in the same. Because it is not yet known whether each provision in the Purchase Agreement that may be at issue in this case is enforceable, it is premature to dismiss ACHD's unjust enrichment claim on this ground. *See MWI Veterinary Supply Co. v. Wotton*, 2012 WL 2576205, at *9 (D. Idaho July 3, 2012) ("[D]ismissal of the unjust enrichment claim is premature because [plaintiff] has not unequivocally admitted that all contractual provisions are enforceable.").

The Court must continue its analysis, however, to determine whether ACHD's unjust enrichment claim should be dismissed on the basis that the claim itself is defeated because the claim itself makes specific reference to the Purchase Agreement.

The Federal Rules of Civil Procedure permit parties to plead inconsistent factual allegations in the alternative. *See* Fed. R. Civ. P. 8(d) (2) and (3). Rhythm does not dispute that alternative and inconsistent theories of recovery are permitted; however, Rhythm argues that Count V—the unjust enrichment claim—incorporates the allegations regarding the Purchase Agreement into Count V. Simply put, Rhythm contends Count V itself alleges facts that defeat the unjust enrichment claim.

"[W]here inconsistent allegations are not pled in the alternative, but are expressly incorporated into each cause of action, an allegation may constitute a judicial admission

---

[6] In *Berkley*, it was not until a post-trial motion for judgment as a matter of law under Fed. R. Civ. P 50(a) was filed that the Court granted the defendant's request to dismiss the plaintiff's equitable claims.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 9**

by the plaintiff which allows dismissal of the complaint." *U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, 2013 WL 6055387, at *9 (S.D. Cal. Nov. 13, 2013) (citing *Maloney v. Scottsdate Ins. Co.,* 256 Fed. Appx. 29, 32 (9th Cir. 2007)).

Review of the Complaint reveals that ACHD included language incorporating "all of the other paragraphs of this Complaint as if set forth in full herein," which include the allegation of an express contract in paragraph 3 and in Count I.[7] Compl., at ¶¶ 3, 27, 50 (Dkt. 1 at 2, 8, 12). In addition, in the Complaint under the claim for unjust enrichment, ACHD makes specific reference to the Purchase Agreement it entered into with Rhythm.[8] The allegations of the existence of a Purchase Agreement between ACHD and Rhythm are inconsistent with the claim for unjust enrichment. Accordingly, the Court will grant Rhythm's motion to dismiss the unjust enrichment claim, but will grant also ACHD leave to amend its Complaint.[9]

## II. Implied Warranty of Merchantability

Rhythm contends that ACHD's breach of implied warranty of merchantability claim should be dismissed, because (1) ACHD failed to sufficiently plead facts to support its claim; and (2) the Purchase Agreement's express warranty precludes ACHD's implied warranty of merchantability claim. The Court will address both arguments.

---

[7] "The subject matter of this litigation is a contract that was entered into by and between ACHD and Rhythm Engineering…." Compl., at ¶ 3 (Dkt. 1 at 2).

[8] "In light of the failure of the equipment and related materials to perform as required under the terms of the Purchase Agreement, it would be unjust for Rhythm Engineering to retain any benefit that it received as a result of entering into the contract with ACHD." Compl., at ¶ 52 (Dkt. 1 at 12).

[9] Amendment of ACHD's unjust enrichment claim is not futile because, as explained above, it has not yet been determined whether all terms in the Purchase Agreement between the parties address the subject matter of this litigation and are enforceable.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 10**

## A. ACHD sufficiently plead its claim for breach of implied warranty of merchantability

Rhythm alleges ACHD's Complaint fails to state a claim for breach of implied warranty of merchantability because ACHD failed to plead facts alleging the adaptive signal control technology system was unmerchantable at the time of delivery. Rhythm alleges also that ACHD failed to sufficiently plead that the alleged problems rendered the system of less than ordinary quality. The Court disagrees and finds ACHD sufficiently plead facts to support its claim for breach of implied warranty of merchantability.

Under Idaho law, to recover for breach of implied warrant of merchantability, the plaintiff must prove: (1) the goods purchased were subject to an implied warranty of merchantability; (2) the goods did not comply with the warranty at the time of delivery; (3) the purchaser's damages were due to the unmerchantable nature of the goods; and (4) damages were suffered as a result of the breach of warranty. *Dickerson v. Mountain View Equip. Co.,* 710 P.2d 621 (Idaho Ct. App.1985). The test for determining breach of an implied warranty of merchantability is to "examine whether the goods were unmerchantable at the time of delivery." *Id.*

In determining whether the product was unmerchantable at the time of delivery, the Court is permitted to infer the merchantability of a product from circumstantial evidence. *Meldco, Inc. v. Hollytex Carpet Mills, Inc.*, 796 P.2d 142, 146 (Idaho Ct. App. 1990) (holding that a later manifestation of disproportionally excessive wear in a carpet was circumstantial evidence to prove the carpet was unmerchantable at the time of delivery); *see also Verbillis v. Dependable Appliance Co.*, 689 P.2d 227, 229 (Idaho Ct.

App. 1984) ("It may be inferred from circumstantial evidence showing a malfunction of the product, *the reasonableness of its use after it was acquired*, and the absence of other reasonable causes for the malfunction.") (emphasis added).

Idaho has adopted Uniform Commercial Code § 2-314, which provides that goods are merchantable, if they:

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

§ 2-314. Implied Warranty: Merchantability; Usage of Trade., Unif. Commercial Code § 2-314. "It is expected that goods be 'generally acceptable quality under the description used in the contract.'" *Powers v. Am. Honda Motor Co.*, 79 P.3d 154, 157 (Idaho 2003) (citing *Dickerson,* 710 P.2d at 624).

ACHD argues that the factual allegations of circumstantial evidence of latent defects in the adaptive signal control technology system in its Complaint sufficiently state a breach of implied warranty of merchantability claim. In support of its position, ACHD cites to *Meldco*, 796 P.2d at 146 (Idaho Ct. App. 1990), to demonstrate that

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 12**

circumstantial evidence including later discovered defects may prove unmerchantability at the time of delivery.

During oral argument, Rhythm argued the facts of this case are distinguishable from *Meldco*. In *Meldco*, carpets purchased by plaintiffs exhibited excessive wear only three months after they were delivered. The Idaho Supreme Court affirmed the district court's determination that, because there was no evidence that plaintiffs misused the carpets, the carpets were unmerchantable at the time of delivery. Rhythm contends that, unlike *Meldco*, there is an alternative plausible theory of liability. Rhythm contends that the alleged defects in the adaptive signal control technology system may have been caused by ACHD when ACHD installed the system. Because an alternative theory of liability exists, Rhythm contends the Court cannot infer from circumstantial evidence that the system was unmerchantable at the time of its delivery.

The Court finds Rhythm's arguments unpersuasive. ACHD sufficiently plead facts to support it breach of implied warranty of merchantability claim. The adaptive signal control technology system was installed and allegedly "operational" by November 21, 2014. Compl., ¶ 28 (Dkt. 1 at 8). ACHD alleges in its Complaint that, as early as December 23, 2014, it began reporting to Rhythm problems with the system—the system kept generating hundreds of notifications with the message "camera unresponsive." Because of this issue, ACHD alleges it had to suspend the field operational testing. ACHD alleges that, three months later, on March 3, 2015, the system began to randomly go into "fog mode," which caused the system to revert to historical data, which in turn, impeded the system's automatic adjustment based on changing traffic conditions. This

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 13**

issue, ACHD alleges, was never adequately repaired, and caused ACHD to suspend its field operational testing on two other occasions.

While ACHD does not specifically allege the adaptive signal control technology system was unmerchantable at the time of delivery, it does allege that only one month after the system was installed and "operational," ACHD began experiencing problems with the system. This circumstantial evidence of latent defects with the system, if true, may demonstrate that the system was unmerchantable at the time of delivery.

The Court is not persuaded by Rhythm's argument that the presence of a plausible alternative theory of liability precludes ACHD from relying on circumstantial evidence to plead a breach of implied warranty of merchantability claim. *Meldco* was an appeal of the district court's decision following a bench trial. The district court's decision in *Meldco* was based on evidence. Here, there is no evidence in the record before the Court that the alleged defects were caused by ACHD during its installation of the system. Rhythm's argument is better suited for a motion for summary judgment.

Moreover, the Court finds also that ACHD has sufficiently alleged facts to support that the system was not of generally acceptable quality under the description used in the contract. ACHD alleges the system was intended to adjust traffic signals based on the flow of then-existing traffic. ACHD pleads in its Complaint that field operational testing had to be discontinued three times because the system failed to adjust traffic lights based on the then-existing flow of traffic. Failure to perform the very function that the system was intended to perform, demonstrates the system was not of generally acceptable quality.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 14**

Accordingly, because the Court finds ACHD has plead facts, if proven as true, support a claim for breach of implied warranty of merchantability, the Court will deny Rhythm's motion to dismiss this claim on these grounds.

### B. It is too soon to determine whether the express warranties in the Purchase Agreement conflict with the implied warranty of merchantability

Rhythm alleges that ACHD's breach of implied warranty of merchantability claim should be dismissed because the detailed express warranties in the Purchase Agreement displace any implied warranty of merchantability. For the following reasons, the Court finds it premature at the motion to dismiss stage to dismiss the breach of implied warranty of merchantability claim on this ground.

Idaho Code § 28-2-317 provides:

> Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:
>
> (a) Exact or technical specifications displace an inconsistent sample or model or general language of description.
>
> (b) A sample from an existing bulk displaces inconsistent general language of description.
>
> (c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

Idaho Code § 28-2-317.

Rhythm contends the express warranty and implied warranty for merchantability are in conflict as to remedies. Rhythm argues that the express warranties define the precise remedies ACHD is entitled to if the product does not perform as expected.

**MEMORANDUM DECISION AND ORDER RE: PARTIAL MOTION TO DISMISS - 15**

Specifically, under one warranty, ACHD is entitled to a full refund within a certain time period if it follows certain procedures. If ACHD is permitted to continue its claim for breach of implied warranty of merchantability, Rhythm argues without citing any case law that ACHD may be able to seek remedies that are beyond or in conflict with those available under the express warranty.

At this stage, the record before the Court lacks sufficient facts and evidence to determine whether the express warranties in the Purchase Agreement and the implied warranty of merchantability are in conflict. The Purchase Agreement, let alone the specific language of the express warranties, are not before the Court. As explained above, ACHD may allege inconsistent claims for relief under Rule 8. Accordingly, the Court will deny Rhythm's motion to dismiss ACHD's breach of implied warranty of merchantability claim on this ground as well.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Rhythm's Motion to Dismiss Count III and Count V of Plaintiff's Complaint (Dkt. 7) is **GRANTED in part and DENIED in part.** Count V is dismissed, with leave to ACHD to amend, if ACHD files its amended complaint *on or before* **November 4, 2016**. The motion to dismiss is denied in all other respects.

Dated: **September 01, 2016**

Honorable Candy W. Dale
United States Magistrate Judge