UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ADA COUNTY HIGHWAY
DISTRICT,

               Plaintiff,

v.

RHYTHM ENGINEERING, LLC,

             Defendant.

Case No. 1:15-cv-00584-CWD

**MEMORANDUM DECISION AND
ORDER RE:**

**MOTION FOR LEAVE TO SERVE
SUPPLEMENTAL RESPONSES (DKT.
39); AND**

**MOTION TO AMEND
COUNTERCLAIM (DKT. 40)**

## INTRODUCTION

Pending before the Court are Defendant Rhythm Engineering, LLC's Motion for

Leave to Serve Supplemental Responses to Plaintiff's First Set of Requests for

Admission and Motion to Amend Counterclaim. (Dkt. 39, 40.) The motions are fully

briefed and the Court heard oral argument from the parties on April 12, 2017. After

review of the record, consideration of the parties' arguments and relevant legal

authorities, and otherwise being fully advised, the Court issues the following

memorandum decision and order granting both motions.

# FACTUAL BACKGROUND[1]

On January 8, 2014, the Ada County Highway District (ACHD) and Rhythm Engineering, LLC (Rhythm), entered into a purchase agreement[2] for the installation of an adaptive signal control technology (ASCT) system on roads throughout Ada County. Adaptive signal control technology systems are made up of hardware and software, which together, help control the flow of traffic over busy roads.

The Purchase Agreement between ACHD and Rhythm contained a two year warranty. Compl., ¶ 9. Rhythm agreed to provide a full refund if, after three months of adaptive operation, ACHD believed the ASCT system did not reduce travel time and emission and fuel consumption, while also improving safety. To receive a full refund, ACHD had to: (1) collect before and after data using the same collection method; (2) allow Rhythm time to "fine tune" the ASCT; and (3) provide a written list of concerns to Rhythm. *Id.*

The Purchase Agreement provided specific terms for ACHD's acceptance of the ASCT system. (Dkt. 39-5 at 7-61.) In part, the Purchase Agreement detailed explicit terms for ACHD to perform validation testing (VAL-T) prior to acceptance of the ASCT system by ACHD. The last day of successful VAL-T was also defined as the contractual acceptance date of the ASCT system. This contractual acceptance of the system would

---

[1] To provide context in understanding these motions, the factual background is taken from ACHD's Complaint. However, this does not constitute factual findings by the Court.

[2] The Adaptive Signal Control Technology Purchase Agreement is comprised of three sections: (1) Scope of Work; (2) Work Schedule; and (3) Payment Schedule. (Dkt. 39-5 at 7-61.)

occur when the ACHD Traffic Engineer granted final approval of the VAL-T process, indicating successful completion. *Id.*

VAL-T involved two distinct testing processes to be completed sequentially over 60 days. The first phase was called Systems Communication Testing (SCT). SCT involved testing "the virtual system server software, the system network communications, and all other elements of the ASCT, through the use of the client workstation in controlling all of the project intersections." *Id.* at 21. The second phase, called Field Operational Testing (FOT), involved "observation of the two main ASCT project corridors, State Street and Chinden Boulevard. . . . [to] ensure the intersections on the two main corridors are operating as required [for 60 days] in the ACHD Concept of Operations and per the System Requirements." *Id.* at 22.

Between December of 2014 and October of 2015, ACHD and Rhythm corresponded in writing and discussed in-person problems with the ASCT system. Compl., at ¶ 11. Rhythm attempted to correct the system's problems; however, ACHD claims Rhythm's attempts were not successful.[3]

---

[3] On December 23, 2015, ACHD emailed Rhythm regarding hundreds of notifications ACHD received with the message "camera unresponsive." Compl., ¶ 12. This forced ACHD to suspend testing of the ASCT system. *Id.* On March 3, 2015, ACHD notified Rhythm of detection issues related to the ASCT system's cameras going into "fog mode," which apparently caused the system to use historical data rather than then-current conditions. *Id.* at ¶ 13. ACHD suspended testing again while Rhythm identified potential fixes to the problem. On June 3, 2015, and again on September 18, 2015, ACHD informed Rhythm the potential fixes did not resolve the "fog mode" issue. *Id.* at ¶¶ 14-15.

On November 9, 2015, ACHD notified Rhythm of its rejection of the ASCT system and termination of the Purchase Agreement.[4] *Id.* at ¶ 19. ACHD identified Section C.12 of the Purchase Agreement as the basis for termination,[5] asserting the ASCT system failed FOT three times by failing to automatically adjust based on the traffic conditions and reducing side street delays. *Id.* In its termination notice, ACHD demanded a full refund. *Id.*

Three days later, Rhythm responded to the termination notice, informing ACHD it did not have the right to terminate the Purchase Agreement under Section C.12, ACHD's rejection of the ASCT system was untimely under the Idaho Uniform Commercial Code, and ACHD failed to comply with the conditions of the warranty. *Id.* at ¶ 20. Rhythm demanded ACHD return the ASCT system equipment within 30 days for a refund under the warranty. On December 8, 2015, ACHD attempted to return the ASCT system equipment to Rhythm via Federal Express overnight delivery; Rhythm refused to accept delivery of the equipment. *Id.* at ¶¶ 24-25.

## PROCEDURAL BACKGROUND

On December 16, 2015, ACHD filed its Complaint against Rhythm asserting the following claims: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a

---

[4] Before informing Rhythm of its intent to terminate the Purchase Agreement, ACHD first received approval to terminate the Purchase Agreement from the Idaho Transportation Department. Compl., ¶¶ 17-18.

[5] ACHD cited also other legal remedies under Section 12.3 of the Purchase Agreement and remedies under the Idaho Uniform Commercial Code.

particular purpose; and (5) unjust enrichment. ACHD seeks a full refund of the costs of the ASCT system and attorney fees.

On September 16, 2016, ACHD served 57 Requests for Admission on Rhythm. (Dkt. 39-1 at 2.) After receiving an extension of time from ACHD, Rhythm responded. *Id.* At issue here is whether Rhythm may amend their admissions to request numbers 29, 30, and 32—all which relate to the completion and approval of VAL-T, and acceptance of the ASCT system. *Id.* at 4. Rhythm contends it initially admitted these three requests for admissions, because it relied on ACHD's representations that VAL-T had not been completed. *Id.* However, Rhythm claims later deposition testimony and other discovery revealed the information Rhythm relied upon was incorrect, and VAL-T had, in fact, been completed before ACHD returned the ASCT system equipment. *Id.* Consequently, because VAL-T was completed, Rhythm contends there was a contractual acceptance of the ASCT system by ACHD. *Id.* In contrast, ACHD contends VAL-T was never completed, and there was no contractual acceptance of the ASCT system.

Following Rhythm's responses to ACHD's requests for admission, the parties conducted additional discovery, including depositions, over the next few months. Hess Decl. (Dkt. 44-1 at ¶5.) Rhythm conducted depositions of six ACHD employees from December 7, 2016, through February 16, 2017. ACHD deposed eight Rhythm employees between December 1, 2016, and February 13, 2017. Four of these eight depositions took place in Kansas City, Missouri, on February 6 and 7. Following the out-of-town depositions, Rhythm served the motions at issue on ACHD on the afternoon of February 7, 2017. *Id.*

Rhythm contends, during the course of these depositions, it discovered pertinent information contrary to information previously provided by ACHD during the VAL-T process—which Rhythm had taken at face value, and relied upon, in drafting both its responses to requests for admissions and its counterclaim. Most specifically, Mike Boydstun, ACHD Traffic Operations Engineer, testified during his deposition he believed the second phase of VAL-T process, FOT, began on November 19, 2014, the day following completion of the SCT phase, and continued, uninterrupted, until December 23, 2014. (Dkt. 39-1 at 5.) It is undisputed that ACHD restarted FOT on February 4, 2015. *Id.*

Rhythm asserts the testimony from Boydstun, combined with the undisputed FOT restart date, establishes the required 60 days of FOT, and consequently VAL-T, was completed successfully on February 28, 2015, contrary to ACHD's assertions that the VAL-T testing was not successfully completed. *Id.* Rhythm arrived at this date of completion based on the following testing periods totaling 60 days:

- 35 days – FOT started on November 19, 2014, and suspended December 23, 2014 by Jim Larsen, ACHD Supervisor of Suspension Management.

- 25 days – FOT resumed on February 4, 2015, and completed February 28, 2015, upon reaching 60 days with no suspension during the second time period.

Finally, because the last day of successful VAL-T is defined as the contractual acceptance date of the ASCT system, Rhythm asserts contractual acceptance of the ASCT system also occurred on February 28, 2015. *Id.* ACHD disputes these calculations and Rhythm's contractual acceptance argument.

**DISCUSSION**

## I.  Motion for Leave to Serve Supplemental Responses (Dkt. 39)

As part of discovery in this case, ACHD served Requests for Admission on Rhythm. Rhythm contends it answered three of these requests based on incorrect calculations regarding the number of days remaining in FOT which were provided by ACHD during the VAL-T process. Rhythm asserts it later learned, during discovery, the information it originally relied upon was incorrect. Therefore, Rhythm argues it should be allowed to amend its answers to the three requests and serve supplemental responses which conform to the newly discovered information.

### A.  Standard of Law

Fed. R. Civ. P. 36(b) provides in pertinent part:

> Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Under this Rule, a two-part test must be satisfied prior to permitting an admission to be withdrawn or amended: "(1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id.* "The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case." *Id.* "Courts are more likely to find prejudice when the

motion for withdrawal is made in the middle of trial." *Id.* When the motion is made

during discovery, however, amendment or withdrawal of admissions is generally an

inconvenience rather than a prejudice. *See id.*

**B. Analysis[6]**

**1.** *Presentation of the Merits*

Here, presentation of the merits of the breach of contract claims asserted by the

parties depends, at least in part, on how the factual dispute regarding completion of the

VAL-T process is resolved. Thus, presentation of the merits of this action would not

likely be subserved if Rhythm's three admissions are not amended. Rhythm's admissions

and proposed amended responses relate to the contractual acceptance of the ASCT

system, and are as follows:

> Request for Admission No. 29: Please admit that VAL-T testing was not
> successfully completed for the ASCT system.

> Response to Request for Admission No. 29: Admit that ACHD did not
> complete the VAL-T testing in the FOT phase.

> Amended Response to Request for Admission No. 29: Denied.        Under
> ACHD's contractual requirements and obligations for VAL-T, SCT was
> completed on November 18, 2014 and FOT began on November 19, 2014.
> On December 23, 2014, FOT was suspended. On February 3, 2015, ACHD
> informed Rhythm Engineering that FOT would restart on February 4, 2015.
> The contractual 60-day time period for FOT expired on March 1, 2015.
> Pursuant to the contractual terms and conditions of testing the ASCT

---

[6] ACHD also argues Rhythm neglected to comply with the meet and confer requirements of Dist. Idaho
Loc. Civ. R. 37.1. (Dkt. 44 at 7.) Rather than meeting and conferring with ACHD regarding its proposed
amended admissions, Rhythm served its motion to serve supplemental responses at "the conclusion of a
set of four depositions of Rhythm employees." *Id.* Rhythm contends ACHD mischaracterizes the present
motion as a discovery motion, and argues there is no meet and confer requirement for motions filed under
Fed. R. Civ. P. 36(b). (Dkt. 45 at 3.) ACHD's argument is moot, as it does not claim it would have agreed
to amendment of the admissions without Court approval. Further, during oral argument, ACHD conceded
it is not asking the Court to deny Rhythm's motion based on a failure to meet and confer.

system, the time period for VAL-T was successfully completed on March 1, 2015.

<u>Request for Admission No. 30:</u> Please admit that ACHD did not provide final acceptance of the ASCT system.

<u>Response to Request for Admission No. 30:</u> Admit that ACHD refused to complete the FOT phase in spite of no failure being found, and therefore did not provide final acceptance.

<u>Amended Response to Request for Admission No. 30:</u> Denied. The 60-day contractual time period for VAL-T expired on March 1, 2015. The completion of VAL-T is one of the requirements for final acceptance of the ASCT system.

. . .

<u>Request for Admission No. 32:</u> Please admit that "Final VAL-T Testing approval" was not granted by the ACHD traffic engineer because all VAL-T had not been successfully completed.

<u>Response to Request for Admission No. 32:</u> Admit that ACHD refused to complete the FOT phase in spite of no failure being found, and therefore the ACHD traffic engineer did not give final approval of the VAL-T testing.

<u>Amended Response to Request for Admission No. 32:</u> Denied. The 60 day contractual time period for VAL-T expired on March 1, 2015.

Rhythm argues, when responding to ACHD's requests for admission, Rhythm relied upon ACHD's representations provided via email exchanges during December of 2014 and throughout 2015, regarding the dates FOT was suspended, restarted, and ultimately terminated. (Dkt. 39-1 at 4-5, 45 at 4-5.) However, Rhythm asserts it later discovered FOT, and therefore VAL-T, was actually completed by ACHD. *Id.* Rhythm argues it had no choice but to rely on ACHD's representations at the time Rhythm made its initial admissions, because ACHD was in control of the VAL-T testing, and it was not until discovery when Rhythm had the opportunity to learn what actually occurred. *Id.*

Because the calculations are pertinent to determining whether there was a contractual acceptance of the ASCT system, Rhythm argues it should be allowed to supplement its responses to ACHD's requests for admissions with accurate responses based on what it learned during discovery. *Id.*

ACHD argues Rhythm relies only on Boydstun's deposition testimony—later contradicted by his declaration filed by ACHD—as support for its motion. Following Rhythm's filing of this motion, ACHD filed a declaration of Boydstun which attempts to correct his deposition testimony. (Dkt. 44-6.) His declaration indicates he reviewed his personal calendars which were not available to him during his deposition, and concludes the FOT could not have started before November 21, 2014.[7] *Id.* Rhythm asserts ACHD misrepresents the record. (Dkt. 45 at 6.) Rhythm contends it relies on evidence supported by the record, including email correspondence from Bruce Mills, ACHD Deputy Director of Engineering, as well as Boydstun's deposition testimony, which support Rhythm's contention that its original admissions were incorrect regarding the VAL-T testing. *Id.*

During oral argument, ACHD conceded that getting disputed versions of the facts before the Court or jury would promote trying the case on its merits. Therefore, the Court finds the first half of the test under Rule 36(b) is satisfied: allowing Rhythm to "amend their admission[s] would aid in the resolution of this case on the merits." *Arguello v. Lee*, No. CV-06-485-E-BLW, 2008 WL 4997501, at *2 (D. Idaho May 14, 2008).

---

[7] Boydstun's date estimation is based on his review of the dates Grant Niehus, a Rhythm employee, was in Boise to configure the ASCT system and train ACHD employees on the system. *Id.* Boydstun's declaration further states his belief FOT could not have started until the Rhythm employee left Boise; however, it also states Boydstun was out of the office on November 21, 2014. *Id.*

## 2. *Prejudice to ACHD*

The Ninth Circuit has repeatedly held that "[t]he prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Hadley*, 45 F.3d at 1348. Here, ACHD has the burden of proving amendment of the admissions by Rhythm would prejudice its presentation of its case. *Id.*

ACHD argues it will be prejudiced if this motion is granted, because Rhythm delayed filing the motion for four months after its initial responses to requests for admissions were served and more than two months after Boydstun's deposition was taken. (Dkt. 44 at 9.) ACHD conceded at oral argument that it is not alleging the prejudice described in *Hadley*. However, ACHD claims a timing issue —Rhythm filed its motion after depositions were taken of Rhythm employees in Kansas City—should be enough to persuade the Court to deny Rhythm's motion.

ACHD contends, "[a]t minimum, [Grant Niehus and Jesse Manning] will have to be re-deposed to determine if they stand by their original testimony or adopt the position currently being taken by their counsel in the Motions at issue." *Id.* at 13.[8] Furthermore, ACHD asserts it will need to question Niehus regarding his actions and whereabouts, and the ASCT system's capabilities, during the week of November 18, 2014. ACHD contends, rather than allowing Rhythm to withdraw or amend its admissions, the Court

---

[8] This argument is perplexing, given all deponents testified while under oath to tell the truth.

should require the parties to proceed to trial on the original admissions, at which time Rhythm employees can change their testimony and be cross examined by ACHD counsel with the benefit of pleadings, deposition transcripts, discovery documents, etc.

In turn, Rhythm asserts the deposition testimony of its representatives would be unchanged. (Dkt. 45 at 8.) Therefore, ACHD would not "need to retake any depositions." *Id.* Further, because ACHD controlled the information relevant to the disputed timing calculations of the VAL-T process while it was being performed in real time, and Rhythm was not privy to the crucial information until it conducted depositions of ACHD employees, any timing issues are the result of ACHD's own making. Rhythm asserts amendment of the original admissions will not prejudice ACHD because ACHD can present its case via its own witnesses, documents, the Purchase Agreement, and cross-examination of Rhythm's witnesses.

The mere inconvenience of retaking a deposition does not rise to the level of prejudice that justifies denial of the withdrawal motion. *See Hadley*, 45 F.3d at 1348. Generally, a much higher reliance on the admissions is necessary to justify denial. *Id.* For example, in *999 v. C.I.T. Corp.*, plaintiff relied heavily on defendant's admissions, even going so far as to have shown them to the jury, with no objection by defendant. 776 F.2d 866 (9th Cir. 1985) (defendant's motion for withdrawal denied in part because it was made during trial when plaintiff, after relying heavily on the admissions, had nearly completed its case). In *Puerto Rico v. S.S. Zoe Colocotroni*, the court denied the defendant's motion to withdraw admissions because the plaintiffs' trial preparation was materially prejudiced by the fact that plaintiffs canceled depositions once defendant

admitted liability (and later repudiated). 628 F.2d 652 (1st Cir. 1980), *cert. denied* 450

U.S. 912 (1981).

In this case, discovery is ongoing and a trial date has not been set. (Dkt. 39-1 at 6.)

The parties have mutually agreed to extend the time for fact depositions, and expert

witness discovery is not yet completed. *Id.* ACHD has conducted depositions and can

conduct additional depositions if it determines the need to do so. Although the Court

recognizes ACHD may incur some increased litigation expenses as a result of any

depositions it may need to retake, this does not tip the balance in favor of denying the

motion. ACHD can utilize deposition testimony and other discovery documents during

cross-examination of Rhythm's representatives, lessening any risk of prejudice to ACHD,

due to the amended admissions or costs to retake depositions.[9]

Here, if the case moves forward to pretrial motions and to trial with the admissions

Rhythm now claims were based on incomplete and inaccurate information, resolution or

presentation of the merits may be subverted. Furthermore, during oral argument, ACHD

conceded it is not arguing the type of prejudice recognized under Rule 36(b) for denying

withdrawal or amendment of admissions. Because presentation of the merits of this

action will be subserved by amendment of the admissions, and ACHD has not proved

prejudice, the motion for leave to serve supplemental responses to the three requests for

admission will be granted.

---

[9] During oral argument, ACHD suggested what appeared to be a brief line of questioning, might be necessary if it chose to re-depose Mr. Niehus. The Court encourages the parties to cooperate and attempt to facilitate telephonic and/or video depositions, to reduce costs, if any depositions are reopened.

## II. Motion to Amend Counterclaim (Dkt. 40)

Rhythm seeks to amend paragraphs 12, 18-19, 21, 24, 28-29, 31-34, 36-38, 55, and 57-58 in its counterclaim. (Dkt 40-1 at 5.) Rhythm's proposed amendments relate to information Rhythm learned in discovery, specifically including the VAL-T timing issue and ACHD's actions relative to the testing. The proposed amendments are primarily limited to the common facts section. Rhythm does not add any counts to its counterclaim, does not propose any changes to the breach of contract claim in Count I, and adds only two paragraphs to Count II – Breach of Implied Covenant of Good Faith and Fair Dealing. Rhythm argues the amendments are necessary for the allegations in its counterclaim to conform to information learned during discovery. *Id.* Pursuant to Local Rule 15.1, Rhythm provided a redlined copy of its proposed amended counterclaim with its motion. (Dkt. 40-3.) ACHD opposes the motion, arguing the proposed amendment is untimely and prejudicial. (Dkt. 44.)

### A. Standard of Law

A party seeking to amend a pleading after the deadline for amendments must satisfy the "good cause" standard of Rule 16(b) in addition to the more liberal standard for amendment of pleadings under Rule 15(a). Once the Court sets its case management schedule pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" inquiry under Rule 16 "is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted). The focus of the good cause analysis is on "the diligence of the party seeking

the extension." *Id.* Thus, the issue under Rule 16(b) is whether the "pretrial schedule ... cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. advisory committee notes (1983 Amendment)) (internal quotation marks omitted).

"Rule 16 was designed to facilitate more efficient disposition of cases by settlement or by trial." *Bright Harvest Sweet Potato Co. v. H.J. Heinz Co., L.P.*, 2014 WL 3341140, at *1 (D. Idaho July 7, 2014); citing *Johnson*, 975 F.2d at 607-08. "If disregarded it would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* (internal quotation marks omitted); *see also* Rule 16 advisory committee notes (1983 Amendment). "When determining whether to grant a motion to amend a scheduling order, a court may also consider 'the existence or degree of prejudice to the party opposing the modification.'" *Id.* (citing *Johnson*, 975 F.2d at 608.) But, if the movant "was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 608.

If there is good cause to modify the case schedule, the "court should freely give leave [to amend pleadings before trial] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court, in interpreting Rule 15(a), has set forth the standard to be applied by the district courts:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

As explained by the Ninth Circuit, the factors identified in *Foman* are not of equal weight; specifically, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The most important factor is whether amendment would prejudice the opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). [A] court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities. *Webb*, 655 F.2d at 979.

### B. Analysis

#### 1. *Failure to reassert counterclaim*

ACHD argues Rhythm does not have an existing counterclaim to amend, because Rhythm failed to reassert its counterclaim when it answered ACHD's amended complaint. (Dkt. 44 at 14.) Rhythm argues its original counterclaim is still valid because it did not dismiss its counterclaim pursuant to Fed. R. Civ. P. Rule 41. (Dkt. 46 at 3-4.) In the alternative, Rhythm argues, "if a party mistakenly designates a . . . counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. Rule 8(c)(2). Rhythm contends, if the Court determines Rhythm was required to reassert its counterclaim, the damages requested in Rhythm's affirmative defenses may be construed as a mistaken designation and corrected, making them a counterclaim. (Dkt. 38 at ¶ 10.)

However, a counterclaim is independent from an answer. *AnTerra Grp. Inc. v. KiVAR Chem. Techs.*, 2014 WL 12589631, at *3 (C.D. Cal. May 23, 2014). Any amendments to a complaint, and in turn an answer, do not require a counterclaim to be reasserted if there are no revisions to it. *Id.* Thus, the Court finds Rhythm did not need to reassert its counterclaim when answering the amended complaint.

### 2. *Good Cause under Rule 16(b)*

ACHD alternatively argues Rhythm lacked diligence in seeking to amend its counterclaim, and therefore, the motion to amend should be denied. (Dkt. 44 at 15.) Specifically, ACHD asserts Rhythm employees participated throughout the FOT testing phase and expressed no objections, nor raised any concerns with how ACHD described the "FOT timing in their answer or original Counterclaim." *Id.* Here, ACHD argues Rhythm's actions in waiting until discovery was "essentially complete," demonstrate carelessness. (Dkt. 44 at 15).

Rhythm argues Rule 16(b)(4) is not the proper standard for consideration of its motion, because it is not seeking to amend the Court's scheduling order. (Dkt. 46 at 5, n.1.) However, "even if the good cause standard were applicable, [its m]otion satisfies that standard as well." *Id.* Rhythm contends ACHD misrepresents the facts and evidence obtained from ACHD during discovery, and misrepresents testimony given by Rhythm representatives during depositions. (Dkt. 46 at 5-6.) Rhythm asserts Boydstun's deposition testimony and Bruce Mills's email correspondence provide substantive factual bases for amending Rhythm's counterclaim. *Id.* at 7. Moreover, because ACHD retained unilateral control over the VAL-T testing process, Rhythm was unable to determine the

true calculation of how many days remained in the VAL-T period until depositions were taken—specifically, the deposition of Mike Boydstun on December 8, 2016. *Id.* at 6. Prior to discovery, Rhythm claims it had no reason to question ACHD's calculations regarding how many days remained in the VAL-T testing period and took ACHD's word at face value. *Id.* at 6.

Key in this inquiry is when Rhythm discovered the information upon which it is basing its proposed amendments. "If a party does not learn of information necessary to amend its complaint until after the scheduling order deadline, no amount of diligence would allow the party to seek amendment before the expiration of the deadline." *Mays v. Stobie,* No. 3:08–CV–552–EJL–CWD, 2010 WL 5110083, at *4-5 (D. Idaho Dec.7, 2010).

On November 7, 2016, the Court issued its amended scheduling order and set November 14, 2016 as the amended pleadings deadline in this case: "The previous deadline to amend pleadings <u>without leave of the court</u> and the deadline to join parties (May 31, 2016) is extended to November 14, 2016." (Dkt. 37)(emphasis added). Rhythm began deposing ACHD representatives on December 7, 2016, after the amendments deadline passed. During depositions, Rhythm discovered the information they claim necessitates amendment of its counterclaim. Accordingly, because Rhythm did not learn of the pertinent information until after the expiration of the amendments deadline, and filed its motion seeking leave of the Court for the amendments shortly thereafter, the Court finds good cause under Rule 16(b) to modify the Case Management Order to the extent such is necessary.

### 3.  *Amendment of pleadings under Rule 15(a)*

#### i.  *Bad faith and undue delay*

ACHD argues Rhythm's motion to amend "is not supported by any substantive factual basis," and "cannot therefore be considered to have been pursued in good faith or without undue delay." (Dkt. 44 at 16.) In support of this argument, ACHD contends Rhythm had plenty of opportunity to address concerns regarding the FOT timing while the testing was occurring. *Id.* at 15. ACHD argues the deposition testimony given by Rhythm's own employees, including that of designated Rule 30(b)(6) deponents, directly conflicts with the proposed amendments to its counterclaim. *Id.* at 16. Further, ACHD asserts Rhythm waited until the conclusion of a set of four out-of-town depositions ACHD was conducting of Rhythm employees to serve the motions on ACHD. *Id.* at 6.

Rhythm argues the record demonstrates there was no delay in bringing its motion to amend, and "there is no evidence of bad faith or dilatory motive" as a result of Rhythm seeking to amend its counterclaim based on the newly discovered evidence. (Dkt. 40-1 at 5.) Additionally, Rhythm asserts "ACHD was in complete, unilateral control of the VAL-T process," which prevented Rhythm from having an opportunity to address the timing of FOT while the testing was occurring. (Dkt. 46 at 6.) Moreover, Rhythm contends it "did not have any reason to question the representations of ACHD [employees] at that time." *Id.* It was not until the discovery phase of this case when Rhythm learned of the timing discrepancies regarding when the FOT process began and whether it was completed before ACHD attempted to return the equipment. *Id.* at 7.

While Rhythm did participate in the VAL-T process, it appears from a review of the record that, during testing, ACHD determined how many days of the testing process had been completed. Rhythm has provided support for its contention that it was not aware how ACHD performed these calculations, which are pertinent to determining whether there was a contractual acceptance of the ASCT system, until it conducted depositions of ACHD employees. The crucial information for Rhythm's amendment was obtained by Rhythm during the deposition of Boydstun on December 8, 2016. On January 25, 2017, Rhythm deposed another key ACHD representative, Jim Larsen, whose email correspondence established part of Rhythm's counter calculations. Rhythm's motion was filed February 7, 2017.

Accordingly, the Court does not find Rhythm's motion to amend its counterclaim was made in bad faith or with undue delay.[10]

### ii. Prejudice to the opposing party

ACHD contends prejudice would result if the motion to amend is granted because amendment of the counterclaim would raise a potentially new issue—whether calculation of FOT days was accurate—requiring the re-opening of factual discovery. (Dkt. 44 at 16.) In turn, ACHD agrees this would increase the costs of litigation, by requiring ACHD to direct resources toward the resolution of issues it previously attempted to resolve via requests for admission. *Id.*

---

[10] Both parties suggest a certain amount of suspect gamesmanship has occurred during discovery in connection with the timing of the requests for admissions and the timing of the motion to supplement responses. Instead of inferring improper motives to either or both sides in this dispute, the Court has focused on ensuring this litigation proceeds to resolution or trial on its merits.

In contrast, Rhythm argues ACHD has failed to establish undue prejudice will occur if the Court grants the motion to amend its counterclaim. (Dkt. 46 at 8.) Moreover, discovery is ongoing, there is no trial date set, and ACHD will have sufficient time to prepare pretrial motions and for trial. (Dkt. 40-1 at 2-6.)

Regarding prejudice, the Court considers the timing of Rhythm's motion and the impact of delay which would be caused by the need for further discovery. The Court also considers whether amendment is consistent with the underlying purpose of Rule 15(a) to: "facilitate decision on the merits, rather than on the pleadings or technicalities." *Webb*, 655 F.2d at 979. Discovery is ongoing in this case and there is no trial date set. The parties have mutually agreed to extend the deadline for fact discovery to conduct depositions. The expert discovery deadline is August 14, and dispositive motions are due July 17, 2017. (Dkt. 37, 42, 47.) Any delay caused by ACHD's potential need to retake depositions, or the need for further discovery, would not have a significant impact on the timing of this case or result in undue prejudice to ACHD.

### iii. Futility

ACHD argues Rhythm's new allegations are in direct conflict with its own employee's testimony, and therefore defective and futile. (Dkt. 44 at 16-17.) "Where proposed new claims are obviously defective or are 'tenuous' from a legal or factual standpoint, the futility analysis weighs against granting leave to amend." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).[11] ACHD

---

[11] In *Lockheed*, the court found the amendment was futile because a cause of action for contributory dilution had not been established. 194 F.3d at 986.

further argues Rhythm relies solely on Mike Boydstun's deposition testimony, which was later itself amended by his declaration. (Dkt. 44 at 17.) ACHD asserts Rhythm should instead be bound by the earlier deposition testimony of Rhythm's own employees, and not be permitted to amend based on information Rhythm learned from ACHD's employees during discovery. *Id.*

Rhythm disputes this characterization of its proposed amendments to its counterclaim, arguing the motion is in fact "supported by substantive factual bases." (Dkt. 46 at 7.) Rhythm argues Boydstun's testimony, ACHD emails, and a March 2015 ACHD report to the Idaho Transportation Department obtained via a public records request, all support its assertions. Further, Rhythm argues *Lockheed* is distinguishable from this case because Rhythm does not want to add a cause of action to its counterclaim. *Id.* Rather, Rhythm is seeking to amend certain allegations so they conform to facts and evidence obtained from ACHD during discovery. *Id.*

Although disputed by ACHD, the Court finds Rhythm's proposed amended allegations are not obviously defective or tenuous, and therefore, not futile.

## CONCLUSION

Presentation of the merits of this action will be subserved by amendment of the admissions to request for admissions and ACHD will not be prejudiced as defined in Rule 36(b) by supplementation of the three admissions as proposed by Rhythm. Accordingly, Rhythm's motion for leave to serve supplemental responses to plaintiff's first set of requests for admission will be granted.

Rhythm learned of the pertinent information necessary to amend its counterclaim during discovery that commenced after expiration of the amendments deadline, and filed its motion for leave of Court to amend shortly thereafter; therefore, the Court finds good cause under Rule 16(b) to modify the case management order. Furthermore, amendment of Rhythm's counterclaim is consistent with Rule 15, does not cause undue prejudice to ACHD, and would not be futile. Accordingly, Rhythm's motion to amend counterclaim will be granted.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Leave to Serve Supplemental Responses to Plaintiff's First Set of Requests for Admission (Dkt. 39) is **GRANTED**. Defendant must serve its amended responses to Requests for Admission Nos. 29, 30, and 32 *no later than* **7 days** after the date of this Order;

2) Defendant's Motion to Amend Counterclaim (Dkt. 40) is **GRANTED.** Defendant must file its proposed amended counterclaim *by* **May 1, 2017**.

Dated: April 25, 2017

Honorable Candy W. Dale
United States Magistrate Judge